IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 17, 2001 Session

## STATE OF TENNESSEE v. ALI MOHSENZADEH

**Appeal from the Circuit Court for Williamson County**
**No. II-232-1198     Timothy L. Easter, Judge**

**No. M2000-01226-CCA-R3-CD - Filed March 20, 2001**

The Defendant was convicted by a jury of DUI and sentenced to thirty days, suspended upon the service of five days, and eleven-months, twenty-nine days probation. The Defendant now appeals, contending that the arresting officer had no reasonable suspicion to pull him over or probable cause to arrest him; that the evidence is insufficient to support his conviction; that the State failed to prove venue; and that his sentence is excessive. We affirm the defendant's conviction and modify his sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

V. Michael Fox, Nashville, Tennessee, for the Appellant, Ali Mohsenzadeh.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Ron Davis; District Attorney General, and Derek K. Smith, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Defendant, Ali Mohsenzadeh, was convicted by a jury of driving under the influence of an intoxicant (DUI), first offense.[1] The trial court sentenced the defendant to thirty days in jail, suspended upon his serving five days, and eleven months, twenty-nine days of probation. The jury assessed a fine of one thousand five-hundred dollars. In this direct appeal, the Defendant contends that the trial court should have dismissed the charge against him because the arresting officer did not have reasonable suspicion to pull him over or probable cause to arrest him following the traffic stop; that the evidence is insufficient to support his conviction; that his conviction must be reversed because the State did not prove venue; and that his sentence is excessive. Upon our review of the

---

[1] See Tenn. Code Ann. § 55-10-401(a)(1).

record and relevant legal authority, we affirm the Defendant's conviction and modify his sentence to eleven months, twenty-nine days, suspended upon the service of five days in confinement.

At about three o'clock on the morning of June 20, 1998, Brentwood Police Department Officer Dustin Miller was eating in a Waffle House restaurant. Officer Miller saw a car pull into the parking lot and park sideways across two spaces. Officer Miller watched the driver come into the restaurant and thought he appeared intoxicated. Officer Miller approached the driver and told him he should not be driving and that he should call someone to come get him. Officer Miller testified that the driver responded that he would do that.

Officer Miller left the restaurant and resumed his patrol. Within an hour he saw a car which he believed was the same one he had seen at the Waffle House. He pulled in behind the car and followed it for some distance. Miller testified that the car was traveling twenty miles an hour in a thirty-five mile an hour zone; that it was "drifting" across its lane; and that it braked frequently. Based on these observations, Officer Miller pulled the car over.

The driver was the Defendant: the same man that Miller had spoken with earlier at the Waffle House. Officer Miller requested the Defendant's driver's license and asked him why he was driving. The Defendant took almost a minute and a half to produce his license. He told Officer Miller, "I'm not intoxicated," and stated that he would walk the short distance to his home. Officer Miller requested the Defendant to perform some field sobriety tests, and the Defendant agreed.

Miller first requested the Defendant to perform the finger-to-nose test, and the Defendant kept trying to start before being instructed to do so. Miller testified that the Defendant touched his upper lip and the bridge of his nose instead of the tip of his nose and that he used three fingers instead of his index finger. The Defendant next tried to perform the one-leg stand. Miller testified that the Defendant touched the ground with his raised foot three times; swayed; and hopped. When the Defendant told Miller that he had had surgery on his right foot, Miller explained that he could stand on his left foot. Nonetheless, the Defendant persisted in standing on his right foot. When Officer Miller told the Defendant to stand on his left foot, the Defendant's performance worsened. Officer Miller then had the Defendant perform the horizontal gaze nystagmus test. Following the Defendant's performance on these tests, Officer Miller arrested the Defendant.

Officer Miller testified that he noticed a very strong odor of alcohol about the Defendant; that the Defendant's eyes were bloodshot and watery; that his speech was slurred; that his clothing was disarranged; and that the Defendant was talkative and uncooperative. Officer Miller testified that the Defendant had been "too intoxicated" to be driving.

During the drive to the police station, the Defendant was very argumentative. Officer Miller testified that, at one point, the Defendant threatened to "have his job." At the station, the Defendant initially agreed to take the breath test, but then refused when he got to the machine.

Officer Miller admitted on cross-examination that the route on which he had followed the Defendant crossed into both Davidson and Williamson counties. He further admitted that he did not know where the county line ran. However, Officer Miller also testified that he stopped the Defendant in Williamson County.

The Defendant testified that he had had one beer earlier that night, at approximately ten o'clock p.m. He stated that Miller accosted him at the Waffle House, saying "You know I can arrest you?" The Defendant was shocked and asked Miller what the charge was. The Defendant testified that Miller told him, "I think you're drunk." The Defendant responded that he was not drunk. He remained at the Waffle House about another hour. He testified that his encounter with Officer Miller upset him.

The Defendant testified that he was "very scared" when Miller pulled him over and was afraid he was going to be hit. He stated that he was sober when he was pulled over and that he felt like Officer Miller was after him. He testified that Miller fabricated evidence. He explained that he had broken his right foot four weeks prior to being pulled over and that he had had eye surgery on both eyes eight days prior to his arrest, which caused them to be bloodshot and watery. He stated that, at the police station, another officer had refused to let him use the mens' room, telling him to "pee in [his] pants." The Defendant testified that he refused to take the breath test because he was convinced that he could not trust the officers or the results. He requested to speak with an attorney, and one of the officers gave him the Yellow Pages. The Defendant's attempts to reach an attorney were unsuccessful, as it was about six o'clock a.m. The Defendant then requested to call his wife. He testified that the officers refused to allow him to make this call until approximately one o'clock p.m.

In his first issue, the Defendant argues both that Officer Miller lacked the reasonable suspicion necessary to justify the traffic stop and that Officer Miller thereafter lacked the probable cause necessary to arrest him. Accordingly, he asserts, the evidence obtained pursuant to the stop and arrest should have been suppressed and the charge against him dismissed. However, efforts to suppress evidence must be made by a motion filed prior to trial. See Tenn. R. Crim. P. 12(b)(3). No such motion was made in this case, and this issue has therefore been waived. See Tenn. R. Crim. P. 12(f). Furthermore, we find both aspects of this issue to be without merit. "An investigatory stop of a motor vehicle may be made upon a reasonable suspicion by a police officer, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." State v. Hiner, 988 S.W.2d 697, 700 (Tenn. Crim. App. 1998). Here, Officer Miller testified that he recognized the car as the one parked askew at the Waffle House, whose driver he believed to be drunk; the car drifted within its lane; the car was being driven fifteen miles an hour below the speed limit; and the car braked frequently. These facts were sufficient to provide Officer Miller with a reasonable suspicion that the driver of the vehicle was intoxicated. Furthermore, given that we find the evidence obtained prior to and during the stop sufficient to support the Defendant's conviction, it was clearly sufficient to provide Officer Miller with probable cause to arrest the Defendant. "Whether probable cause is present depends upon whether the facts and circumstances and reliable information known to the police officer at the time of the arrest 'were sufficient to warrant a prudent

man in believing that the [defendant] had committed [. . . ] an offense.'" State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Both the stop and the arrest were therefore legal and the evidence produced as a result thereof not subject to suppression.

The Defendant also contends that the evidence was not sufficient to support his DUI conviction. We disagree. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

A person commits the offense of DUI when he or she drives an automobile on any public road or highway in the State while under the influence of "any intoxicant . . . ." Tenn. Code Ann. § 55-10-401(a)(1). There is no dispute that the Defendant was driving his automobile on a public road in Tennessee. The only issue, therefore, is whether the proof was sufficient to support the jury's finding that the Defendant did so while under the influence of alcohol. Officer Miller testified that the Defendant had parked his car across two spaces at the Waffle House and that he had appeared intoxicated while at that restaurant. When Officer Miller pulled him over approximately an hour later, he testified that he noticed a strong odor of alcohol about the Defendant; that his speech was slurred; that his clothing was disarranged; and that he was talkative and uncooperative. Additionally, Officer Miller testified that the Defendant did not perform well on the field sobriety tests that Officer Miller requested he do. This evidence is sufficient to support the jury's finding that the Defendant was driving while intoxicated. This issue is therefore without merit.

The Defendant next contends that his conviction must be set aside because the State failed to prove that Williamson County was the correct venue in which to try him. We disagree. Officer Miller testified that the route over which he followed the Defendant crossed through both Davidson and Williamson Counties. "If one or more elements of an offense are committed in one county and one or more elements in another, the offense may be prosecuted in either county." Tenn. R. Crim. P. 18(b). Here, Officer Miller's testimony indicated that the Defendant was committing the offense of driving while intoxicated in both Davidson and Williamson counties. Moreover, Officer Miller testified that he pulled the Defendant over in Williamson County, and there was no proof to the contrary.

Venue need be proved by only a preponderance of the evidence. See Tenn. Code Ann. § 39-11-201(e). "Slight evidence is enough to carry the prosecution's burden of preponderance if it is uncontradicted." Ellis v. Carlton, 986 S.W.2d 600, 602 (Tenn. Crim. App. 1998). Officer Miller testified that he pulled the Defendant over in Williamson County. Although Miller admitted that the route the Defendant drove while Miller followed him crossed through both Davidson and Williamson Counties, Miller was certain that the actual stop occurred in Williamson County. "An officer's rational belief that a crime occurred within a given county can meet the burden of proof to show proper venue." State v. Darrell Dodson, No. M1998-00067-CCA-R3-CD, 2000 WL 378347, at *11 (Tenn. Crim. App., Nashville, Apr. 14, 2000). Officer Miller's testimony was sufficient for a rational jury to infer that the offense occurred in Williamson County. The State satisfied its burden of proving venue, and this issue is therefore without merit.

Finally, the Defendant contends that his sentence is excessive. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In this case, a sentencing hearing was held, although no additional proof was offered by either the State or the Defendant. The court sentenced the Defendant to thirty days at seventy-five percent, suspended upon the service of five days, and eleven months, twenty-nine days probation. However, the mandatory sentence for DUI, first offense, is eleven months, twenty-nine days, with a minimum of forty-eight hours served in confinement. See Tenn. Code Ann. § 55-10-403(a)(1). See also State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998) ("A defendant convicted of DUI automatically receives a sentence of eleven months and twenty-nine days.") Thus, the trial court erred when it set

the Defendant's sentence at thirty days. The trial court's sole function in setting the length of a sentence for a DUI conviction is "to determine what period above the minimum period of incarceration established by statute, if any, is to be suspended." State v. Combs, 945 S.W.2d 770, 774 (Tenn. Crim. App. 1996). One convicted of a misdemeanor, unlike one convicted of most felonies, is not entitled to a presumptive minimum sentence. See State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

We disagree that the trial court erred in setting the Defendant's period of confinement at five days. The trial court increased the Defendant's period of confinement from the minimum of forty-eight hours to five days because it found the Defendant's trial testimony "untruthful" with respect to the amount of alcohol he had consumed on the night in question. Truthfulness is a factor which the trial court may properly consider in determining the manner of service of a sentence. See State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Helen Dixon Devers, No. M1999-00427-CCA-R3-CD, 2000 WL 804710, at *3, (Tenn. Crim. App., Nashville, June 23, 2000).

Accordingly, we modify the Defendant's sentence to eleven months, twenty-nine days, suspended upon the service of five days in confinement, with the balance to be served on probation. The conditions of probation set by the trial court remain in effect. The trial court's judgment is otherwise affirmed.

_____
DAVID H. WELLES, JUDGE